```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/29/2018
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,

            -against-                              17-cr-0686 (LAK)

JAMES GATTO, a/k/a "Jim,"
MERL CODE, and
CHRISTIAN DAWKINS,

                  Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

        Aline R. Flodr
        Edward B. Diskant
        Noah David Solowiejczyk
        Robert Lee Boone
        Eli Jacob Mark
        Assistant United States Attorneys
        ROBERT KHUZAMI
        DEPUTY UNITED STATES ATTORNEY

        Michael Steven Schachter
        Casey Ellen Donnelly
        WILLKIE FARR & GALLAGHER LLP

        David Angeli
        ANGELI LAW GROUP LLC

        *Attorneys for Defendant James Gatto*

        Andrew A. Mathias
        William W. Wilkins
        Mark C. Moore
        NEXSEN PRUET, LLC

Johanna Rae Hudgens
WINSTON & STRAWN LLP

James Lawrence Bernard
Joel Cohen
STROOCK & STROOCK & LAVAN LLP

*Attorneys for Defendant Merl Code*

Jennifer L. Brown
FEDERAL DEFENDERS OF NEW YORK INC.

Steven A. Haney, Sr.
HANEY LAW GROUP PLLC

*Attorneys for Defendant Christian Dawkins*

LEWIS A. KAPLAN, *District Judge.*

This matter is before the Court on defendants' joint motion seeking "an Order granting Defendants' Motion to Compel the Government to Review Evidence in its Possession for *Brady* Material" [DI 81].

## Background

*Prior Briefing*

The notice of motion misstated the nature of defendants' request. Defendants' initial memorandum of law made clear that the real object of defendants' motion was not to compel review, but rather to compel production, specifically of "'any written or recorded statement,' or the 'substance of any oral statement provided to the Government,' including statements made by an

3

attorney for any individual or entity, that would be 'material' to preparing Defendants' defense."[1]

But defendants' motion, as initially drafted, was beset by two issues. First, as this Court explained at oral argument on March 22, 2018, the motion, which provided a list of examples of information that defendants asserted would be material to their defense,[2] effectively was an attempt to "serve interrogatories and Rule 34 notices that would [do] credit to a plaintiff in a securities class action."[3] In other words, defendants sought the government's "whole file."[4] Second, defendants' requests arguably were, at best, premature, and at worst, without a basis in law. The government had already made numerous *Brady* disclosures and had maintained consistently that it "recognize[d] its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny" and would "provide timely disclosure if any such material [came] to light."[5] It represented also that it would "provide material under *Giglio v. United States*, 405 U.S. 150, 154 (1972), and its progeny, in a timely manner prior to trial."[6] The government's disclosures to date then included descriptions of statements made by certain individuals, including student-athletes and NCAA coaches, with whom the government had met. Defendants' motion nonetheless asked that the government go

---

[1]  DI 82 at 2.

[2]  *Id.* at 15-17.

[3]  DI 130 ("Tr.") at 47.

[4]  *Id.*

[5]  DI 82-2 at 3, DI 82-3 at 2.

[6]  *Id.*

4

further and promptly disclose the actual statements made by these individuals.

During oral argument, in an effort to resolve at least the first issue, defendants requested an opportunity to submit a supplemental brief to narrow their disclosure requests. The Court granted their request.[7] The supplemental briefing having concluded, defendants' motion now is ripe for consideration.

*This Motion*

The title of defendants' supplemental brief now characterizes their motion as one to "compel the government to produce exculpatory and impeaching witness statements."[8] They ask the Court, "in the interests of justice, to compel the Government to promptly disclose the actual statements made to the Government by certain witnesses regarding a narrow set of critical topics,"[9] as delineated in the supplemental brief.[10]

Defendants argue that the government should be compelled to disclose these witness statements for three independent reasons: (1) to comply with their obligations under *Brady v. Maryland*, (2) to comply with their ethical obligations as prosecutors, and (3) as a matter of sound case management.

---

[7] Tr. at 51.

[8] DI 133 (capitalization omitted).

[9] *Id.* at 1.

[10] *Id.* at 11.

*Discussion*

Brady v. Maryland

Under *Brady v. Maryland*, the government "has a constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or to punishment."[11] "Favorable evidence includes not only evidence that tends to exculpate the accused, but also evidence that is useful to impeach the credibility of a government witness."[12] *Brady* does not, however, compel the routine or wholesale disclosure of witness statements.

It is undisputed that the government timely has disclosed information sufficient to inform defendants of potentially exculpatory information that they may wish to investigate further, which in essence is what *Brady* requires. Among other things, the government conveyed that ███

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

---

[11]    *United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)).

[12]    *Id.* (citing *Giglio v. United States*, 405 U.S. 150, 154 (1972)).

6

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████

In addition, the government has represented that it has and will continue to comply with its obligations under *Brady* as well as *Giglio*. There is no reason to think that the information that the government has provided to this point has been insufficient for these purposes.[13] To conclude otherwise would be to ask the Court to decide in advance of trial whether the government's non-production of specific documents or categories of evidence would violate its *Brady* obligations – a premise that is flatly contrary to the law in this Circuit.[14] Accordingly, defendants' motion, insofar as it is premised on *Brady v. Maryland*, fails.

---

[13]

*See United States v. Martoma*, No. 12 Cr. 973 (PGG), 2014 WL 31704, at *3 (S.D.N.Y. Jan. 6, 2014) ("'[N]o Brady violation occurs if the defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory [and impeachment] evidence.'" (quoting *United States v. Gaggi*, 811 F.2d 47, 59 (2d Cir. 1987)). *Cf. United States v. Triumph Capital Grp., Inc.*, 544 F.3d 149, 161-62 (2d Cir. 2008) (concluding failure to disclose agent's proffer notes constituted *Brady* violation because proffer notes were "materially different" from the description of the proffer in the disclosed FBI report and there was "reasonable probability" that disclosure might have given the jury reasonable doubt as to defendant's culpability).

[14]

*See, e.g., United States v. Stein*, 424 F. Supp. 2d 720, 725-27 (S.D.N.Y. 2006) (reasoning that "there can be no *Brady* violation in the absence of prejudice," the existence of which may be determined only after trial); *see also Coppa*, 267 F.3d at 140 ("Although the government's obligations under *Brady* may be thought of as a constitutional duty arising before or during the trial of a defendant, the scope of the government's constitutional duty – and, concomitantly, the scope of a defendant's constitutional right – is ultimately defined retrospectively, by reference to the likely effect that the suppression of particular evidence had on the outcome of the trial." (citations omitted)).

*Ethical Obligations*

Defendants next argue that "[t]he Government's duty to disclose exculpatory evidence is not limited to its *Brady* obligations; professional conduct rules require the Government to disclose favorable evidence 'as soon as reasonably practicable,' regardless of whether the evidence is 'material' in the *Brady* sense."[15] Defendants refer to New York Rule of Professional Conduct 3.8(b), which provides, in relevant part:

> "A prosecutor or other government lawyer in criminal litigation shall make timely disclosure to counsel for the defendant . . . of the existence of evidence or information known to the prosecutor or other government lawyer that tends to negate the guilt of the accused, mitigate the degree of the offense, or reduce the sentence, except when relieved of this responsibility by a protective order of a tribunal."[16]

This argument is similarly unavailing. Although prosecutor's obligations under this rule and under *Brady* appear to be distinct to some extent,[17] defendants fail to provide any legal basis for the argument that this or any other rule of professional conduct compels the disclosure of the

---

[15]

DI 133 at 2-3 (citing N.Y.C. Bar Ass'n Comm. on Prof'l Ethics, Formal Op. 2016-3 (2016); N.Y. RULES OF PROF'L CONDUCT R. 3.8(b); MODEL RULES OF PROF'L CONDUCT R. 3.8(d)).

[16]

Model Rule of Professional Conduct 3.8(d) similarly provides, in relevant part:

"The prosecutor in a criminal case shall . . . make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense . . . except when the prosecutor is relieved of this responsibility by a protective order of the tribunal."

[17]

N.Y.C. Bar Ass'n Comm. on Prof'l Ethics, Formal Op. 2016-3, at 2 (2016) ("While *Brady* has been held to require a prosecutor to disclose only 'material' evidence favorable to the accused, Rule 3.8 on its face is not subject to the same materiality limitation. Further in certain situations, Rule 3.8, which requires 'timely' disclosure, may also require earlier disclosure than is required under some of the case law, statutes and rules."); *see also Coppa*, 267 F.3d at 141-42 ("'[T]he rule in *Bagley* (and, hence, in *Brady* ) requires less of the prosecution than the ABA Standards for Criminal Justice, which call generally for prosecutorial disclosures of any evidence tending to exculpate or mitigate.'" (quoting *Kyles v. Whitley*, 514 U.S. 419, 437 (1995))).

witness statements defendants seek in the present context of this case.[18]

*Sound Case Management*

Defendants' final argument is that the Court should compel production of the aforementioned witness statements "as a matter of sound case management."[19]

Trial courts in this Circuit indeed have the latitude to require pretrial disclosure of evidence as a matter of sound case management.[20] As this Court has stated before:

> "Sound case management involves consideration of many factors. Certainly one is whether pretrial disclosure is likely materially to reduce the risk of either a mid-trial delay occasioned by the need to pursue important evidence that could have been disclosed earlier or, in the event of a conviction, the need for a new trial to remedy an otherwise avoidable Brady violation. Another is the extent to which pretrial disclosure of otherwise undiscoverable materials would delay and complicate the trial without materially serving the cause of a just outcome."[21]

Moreover, in *Stein*, this Court declined to compel the production of certain requested items because the disclosures that had already been made left defendants "well able to pursue the matter without

---

[18] Moreover, although courts have "inherent power to preserve the integrity of the adversary process," *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 241 (2d Cir. 2016) (quoting *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005)) (internal quotation marks omitted), ethical violations by attorneys, as a general matter, appropriately are addressed through federal ad state disciplinary mechanisms rather than in the federal courts. In the context of a motion to disqualify an attorney, for example, "disqualification is called for only where 'an attorney's conduct tends to taint the underlying trial,' because federal and state disciplinary mechanisms suffice for other ethical violations." *Id.* (quoting *Bd. of Ed. of City of N.Y. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)).

[19] DI 133 at 2.

[20] *Coppa*, 267 F.3d at 146; *see also Stein*, 424 F. Supp. 2d at 726-27.

[21] *United States v. Stein*, 473 F. Supp. 2d 597, 603 (S.D.N.Y. 2007).

additional disclosure" if indeed they found it helpful to do so.[22]

Defendants argue that they "suspect that the Government has no intention of calling Mr. Augustine, the student-athletes, their family members, or any of the Universities' coaches as trial witnesses," in which case the witness statements that defendants seek might never be disclosed.[23] As discussed above, however, there is no legal basis under *Brady* to compel the government to disclose the witness statements themselves if the government has disclosed information sufficient to notify defendants of the potentially exculpatory material. Indeed, as the government argues, it "has put the defendants on notice, as much as 10 months before trial, of issues they may wish to investigate further, including the existence of witnesses they may seek to interview, and prospective testimony they may seek to elicit at trial."[24]

To the extent that defendants are concerned that the aforementioned individuals will not be willing to discuss the case or, if called to testify, would invoke the Fifth Amendment, their request is premature at best. Defendants assert that "there is a strong possibility that they will need to ask the Court to compel the Government to immunize certain individuals."[25] But the circumstances in which a court may compel the government to grant immunity are limited. "The government is under no general obligation to grant use immunity to witnesses the defense designates

---

[22] *Id.*

[23] DI 133 at 9-10.

[24] DI 140 at 2.

[25] DI 133 at 9.

10

as potentially helpful to its cause but who will invoke the Fifth Amendment if not immunized."[26] Moreover, defendants have not yet found themselves in circumstances that conceivably would warrant requesting an order of immunity. Defendants' assertion that they may need the FBI 302 reports in order to build their case for immunity is speculative and unavailing.

Defendants argue also that the statements they request "will assist [them] in developing the specific defenses they intend to present at trial" and in reflecting such defenses in their proposed jury instructions,[27] which this Court has instructed the parties to submit by August 15, 2018.[28] This argument is without merit. Parties regularly submit proposed jury instructions ahead of receiving Jencks Act and *Giglio* material, and receive ample opportunity to request or object to jury instructions during trial. The Court sees no reason to compel production of the requested witness statements on this basis.

---

[26]

*United States v. Ebbers*, 458 F.3d 110, 118 (2d Cir. 2006) (citing *United States v. Turkish*, 623 F.2d 769, 774 (2d Cir.1980)).

If defendants suspect that the government is engaging in selective immunization, it can request that the Court "order the prosecution to choose between forgoing the testimony of an immunized government witness or granting use immunity to potential defense witnesses." *Id.* at 119. In such a case, defendants first would have to "show that the government has used immunity in a discriminatory way, has forced a potential witness to invoke the Fifth Amendment through 'overreaching,' or has deliberately denied 'immunity for the purpose of withholding exculpatory evidence and gaining a tactical advantage through such manipulation.'" *Id.* (quoting *United States v. Diaz*, 176 F.3d 52, 115 (2d Cir. 1999)). Second, defendants would have to "show that the evidence to be given by an immunized witness 'will be material, exculpatory and not cumulative and is not obtainable from any other source.'" *Id.* (quoting *United States v. Burns*, 684 F.2d 1066, 1077 (2d Cir. 1982)).

[27]

DI 133 at 10.

[28]

DI 108.

11

## *Conclusion*

The Court declines to compel production of the requested witness statements, at least

at this time.  For the foregoing reasons, defendants' joint motion [DI 81] is denied.

SO ORDERED.

Dated:        June 29, 2018

_____

Lewis A. Kaplan.
United States District Judge