# WILLKIE FARR & GALLAGHER LLP

Michael S. Schachter
212 728 8102
mschachter@willkie.com

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

October 4, 2018

**BY EMAIL AND BY HAND**

The Honorable Lewis A. Kaplan
United States District Court for the
Southern District of New York
Room 1940
500 Pearl Street
New York, NY 10007

Re:   *United States v. Gatto, et al., Case No. S2 17-cr-686 (LAK),*
      *NCAA's June 15, 2017 COI Decision Regarding the University of Louisville.*

Dear Judge Kaplan:

       We write on behalf of all Defendants to inform the Court that, notwithstanding the defense's good-faith efforts to work with the Government, the parties have failed to come to an agreement on a stipulation regarding the NCAA's June 15, 2017 Committee on Infractions ("COI") Decision concerning the University of Louisville's provision of impermissible benefits to prospective recruits and enrolled athletes (the "Louisville COI Decision"). Attached hereto as Exhibit A is Defendants' latest effort to reach a stipulation with the Government (the "Proposed Stipulation"). This Proposed Stipulation reflects the limited set of facts that Defendants intend to elicit from Government witness John Carns of Louisville.

       In short, the NCAA found that Louisville provided exotic dancers and prostitutes to its basketball players and to high school recruits who were visiting the University's campus. These impermissible benefits were provided over a period of approximately three and one-half years, between 2010 and 2014. (Ex. A at ¶ 1). The NCAA also found that over this four year period, Louisville's men's basketball head coach Rick Pitino had committed a Level I violation for failing to adequately supervise the former director of basketball operations who had arranged for the impermissible recruiting benefits. (*Id.* at ¶ 4). The COI imposed certain penalties upon Louisville, including placing the University on probation for a period of four years, and vacating its 2013 NCAA Division I Men's Basketball Championship. (*Id.* at ¶ 7). The University of Louisville publicly supported Coach Pitino throughout the case, including after the NCAA issued its June 15, 2017 findings. (*Id.* at ¶ 5).

As we understand it, the Government's principal objection to the admission of this evidence is that the jury would learn the true nature of the violation. They have urged that the jury be told instead that Louisville's violation was the provision of "improper entertainment benefits." Defendants believe that this term has no meaning; it could reference the provision of movie tickets, and undercuts the probative nature of this evidence. The defense also believes that there is no cause to conceal from the jury the true nature of the violation, in the abbreviated manner the defense suggests. Juries hear evidence far more salacious than this all the time. They routinely hear cases involving allegations of prostitution and crimes of violence, and can still be counted on to render verdicts based on the Court's instructions on the law and the evidence. There is no cause to conclude that this jury would be so distracted by the nature of Louisville's violation that it will prevent them from impartially weighing the evidence and drawing appropriate inferences pursuant to the Court's instructions.

Defendants maintain that the fact that Louisville received this well-publicized sanction—issued mere weeks before the events relating to Brian Bowen, Jr. that are alleged in the Indictment—is relevant to showing a lack of intent to defraud on the part of Defendants. Evidence that the University previously engaged in violations of the NCAA rules of this nature, for a three and a half year period, in order to recruit top athletes is directly relevant to Defendants' belief that they were helping, not harming, Louisville by similarly engaging in rule violations in order to ensure Louisville received the commitment of a talented high school athlete. In fact, Louisville's Level 1 violation was based on the same rule violation alleged in the Indictment—NCAA Bylaw 13's prohibition on impermissible benefits. (Ind. ¶¶ 20-21; Ex A at ¶ 3).

The evidence is also relevant to the jury's consideration of the materiality of the allegedly false eligibility certifications submitted to Louisville. The egregiousness of Louisville's rule violations may cause the jury to infer that the certifications were not material to Louisville's decision to award athletic aid to athletes.

Further, the Government has indicated that it intends to argue that Coach Pitino and the Louisville assistant coaches who asked Defendants to violate the NCAA's rules in connection with Bowen, Jr.'s recruitment were rogue employees and not agents of the University. (Gov't Br. In Opp. To Defs. Mot. To Dismiss, Dkt. 67, at 19). The jury should be permitted to hear that Louisville continued to support Coach Pitino even after the NCAA found that he too violated NCAA rules and was responsible for this misconduct, since that evidence is probative of whether Defendants believed they were doing what the University wanted, and thus did not intend to defraud Louisville.

Indeed, the evidence unequivocally proves that Defendant Dawkins was well aware of the nature of the sanction, and drew these very conclusions about Louisville's approach to compliance with NCAA rules and the importance of Coach Pitino to the University. [redacted]

[REDACTED]

There is no reason to believe the jury will draw any inference from the true nature of the violation other than the inference they may find that Defendants drew. That is not unfair prejudice. That is just an inference which may be appropriately drawn based upon the facts.

The Government's concern that the admission of this evidence will invite a mini-trial is without basis. The facts regarding the NCAA's decision are undisputed, and they are set forth in the seven paragraphs that comprise Defendants' proposed stipulation. (Ex. A). (The Government last evening proposed some additions to which the we are confident the parties can reach agreement.) Defendants only seek to probe Mr. Carns on these facts—and these facts alone.

For these reasons, Defendants respectfully submit that they should be permitted to cross-examine the Government's witness from Louisville, John Carns, with the facts of the Louisville COI Decision as set forth in the Proposed Stipulation.

Respectfully submitted,

*Michael Schacter* /C.S.M.

Michael S. Schachter

On Behalf Of:
Mark C. Moore
Merl F. Code
*(Counsel for Defendant Merl Code)*

Steven A. Haney
*(Counsel for Defendant Christian Dawkins)*

cc (by email):
Edward Diskant
Noah Solowiejczyk
Mark Eli
Aline Flodr
U.S. Department of Justice

3