# WILLKIE FARR & GALLAGHER LLP

MICHAEL S. SCHACHTER
212 728 8102
mschachter@willkie.com

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

October 4, 2018

**BY EMAIL AND BY HAND**

The Honorable Lewis A. Kaplan
United States District Court for the
Southern District of New York
Room 1940
500 Pearl Street
New York, NY 10007

Re:  *United States v. Gatto, et al.*, Case No. S2 17-cr-686 (LAK),
     *Defendants' Letter Brief In Support of Their Objection to the Admission of GX1607 and GX1609.*

Dear Judge Kaplan:

      We write in response to Your Honor's invitation that the parties brief the admissibility of GX1607, a Louisville Financial Aid Agreement signed by Brian Bowen, Jr. and his mother, Carrie Malecke, and GX1609, a Student Athlete Statement signed by Brian Bowen Jr. (Tr.195:2-25.) Defendants object to the admission of GX1607 and GX 1609 (together, the "Bowen Certifications") because these documents are irrelevant, as Defendants understand that the Government does not plan to submit evidence that Defendants knew of the existence of these Certifications.

      Count One of the Indictment alleges that Defendants participated in a conspiracy to commit wire fraud against the University of Louisville and three other universities. Accordingly, the Government will have to establish that "the future conduct agreed upon" by each Defendant "include[d] all elements of the substantive crime" of wire fraud. *United States v. Pinckney*, 85 F.3d 4 (2d Cir. 1996) (reversing the conviction of conspiracy to operate a chop shop on the grounds that the

government failed to prove that "the future conduct agreed upon include[d] all elements of the substantive crime"). The *actus reus* of a wire fraud offense is an "affirmative misrepresentation" or the "omission of material information that the defendant has a duty to disclose." *United States v. Autuori*, 212 F.3d 105, 118 (2d Cir. 2000); *United States v. Rybicki*, 354 F.3d 124, 146 (2d Cir. 2003) (a "material misrepresentation is an element" of wire fraud); *United States v. Weimert*, 819 F.3d 351, 357 (7th Cir. 2016) ("the federal mail and wire fraud statutes reach…[the] deliberate misrepresentation of facts or false promises that are likely to affect the decisions of a party on the other side of the deal."); *United States v. Curtis*, 635 F.3d 704, 718 (5th Cir. 2011) ("A false or fraudulent material misrepresentation is an element of the offense of wire fraud."); *see also* L. Sand, et al, Modern Fed. Jury Inst. § 44-11 (2015) ("[I]t is now well accepted" that a "scheme to defraud must include some false statement, representation or promise.").

In this case, the Indictment does not charge a theory of wire fraud based on an omission in the face of a duty to disclose, *see Autuori*, 212 F.3d at 118, but rather alleges that Defendants made, or caused to be made, affirmative misrepresentations to Louisville in the form of "false certifications" regarding compliance with NCAA rules that were submitted by the student-athletes described in the Indictment, or, in certain cases, their family members. (*See* Ind. ¶¶ 31, 37, 42, 46 (Defendants "intended to make, or caused or intended to cause others to make false certifications" regarding athletes' compliance with NCAA rules to the Universities.)  As Defendants understand it, the Government contends that the Bowen Certifications constitute the "false representations" through which Defendants intended to obtain money or property from Louisville.  18 U.S.C. §1343 (the wire fraud statute prohibits schemes to "obtai[n] money or property . . . by means of false or fraudulent pretenses, representations, or promises.").

Defendants object to the admission of the Bowen Certifications on the basis of relevance. The jury will be asked to decide whether Mr. Gatto, Mr. Code, and Mr. Dawkins each agreed to participate in a wire fraud scheme against Louisville, in which money or property was to be obtained by means of false statements submitted to Louisville. *Id.* Defendants have asked the Government if it intends to admit evidence demonstrating that Mr. Gatto, Mr. Code, and Mr. Dawkins knew of the existence of the Bowen Certifications. While the Government has not yet provided Defendants with an answer to that question, Defendants believe, based on the Government exhibits disclosed to the defense, that the Government will not offer any such evidence.

Since there will be no evidence demonstrating Defendants knew of the Bowen Certifications, their admission does not "tend to make" it "more or less probable" that Defendants agreed to participate in a wire fraud scheme against Louisville, in which money or property was to be obtained by means of false statements submitted to Louisville. *United States v. Certified Envh. Services, Inc.*, 753 F.3d 72, 90 (2d Cir. 2014) (evidence that has "any tendency to make a material fact more or less probable than it would be otherwise" is relevant). In other words, because the admission of the Bowen Certifications would "not tend to prove a material fact, [they are] irrelevant" and should not be admitted. *Arlio v. Lively*, 474 F.3d 46, 52 (2d Cir. 2007). This conclusion is buttressed by the Supreme Court's admonishment in *Ingram v. United States*, in which it explained that "to establish the intent" to participate in a conspiracy, "the evidence of knowledge must be clear, not equivocal. This [is] because charges of conspiracy are not to be made out by piling inference upon inference, thus fashioning . . . a dragnet to draw in all substantive crimes." 360 U.S. 672, 677, 79 S. Ct. 1314, 1319 (1959) (defendant could not have entered into a "conspiracy with a purpose illegal under federal law"

3

where defendant operated a lottery prohibited by state law, but the record contained no evidence that defendant knew the lottery was subject to federal taxes).

Based on the conversations between the parties and the Government's response to Your Honor's questions in court yesterday, Defendants believe the Government's position is that the Bowen Certifications are admissible, even in the absence of evidence that Defendants knew of their existence, because it would have been "reasonably foreseeable" to Defendants that a false statement regarding NCAA Compliance would be submitted to Louisville by Brian Bowen Jr. or his mother, Carrie Malecke. (Tr. 194:24-195:16.) Defendants understand the Government to be referring to the concept that the actions of one conspirator may be attributed to his co-conspirator if those actions were "reasonably foreseeable."

The Government's argument, however, assumes that Defendants are "co-conspirators" of Brian Bowen, Jr. and his mother, Carrie Malecke. That assumption is flawed for two reasons. First, and most importantly, without evidence demonstrating that Defendants possessed knowledge that false statements would be submitted to Louisville, there is no basis for finding that Defendants participated in the charged conspiracy against Louisville. In other words, the Government must *first* establish that Defendants knowingly and willfully joined the charged conspiracy—which requires proof that Defendants knowingly and willfully agreed to participate in a fraud scheme accomplished by means of false certifications submitted to Louisville—before the Government can argue that the submission of the Bowen Certifications were "reasonably foreseeable" actions of Defendants' co-conspirators.

Second, on September 15, 2018, at the request of Defendants, the Government provided the defense with a "list of the individuals whom the Government presently intends to assert, at trial, were members of the conspiracy charged in Count One of the Second Superseding Indictment." (Ex.

4

1.) Neither Brian Bowen Jr. nor Carrie Malecke—the individuals who signed and submitted the Bowen Certifications—were included as participants in the charged conspiracy. Accordingly, false statements submitted by these two individuals cannot be attributed to Defendants on the basis that they are the "reasonably foreseeable" actions of Defendants' co-conspirators. While the Government did "reserve the right" to amend its proffered list, Defendants do not believe there is an evidentiary basis to conclude that either Brian Bowen Jr. or his mother were members of the charged conspiracy.

The Government may not establish the relevancy of the Bowen Certifications by proclaiming that Defendants must have been "intimately familiar" with the certifications required of prospective athletes by Louisville due to their "experience and sophistication in the world of college basketball." (Gov. Br. In Opp. To Defs. Mot. To Dismiss, ECF No. 67, at 5, n.3). The Government cannot create an improper inference in the jury's mind that a defendant "must have had guilty knowledge" by arguing that "everybody in the trade, including [the defendant], knew of" the fact at issue. *United States v. Patrisso*, 262 F.2d 194, 197 (2d Cir. 1958).

Moreover, Mr. Gatto and Mr. Code have spent their careers at professional sportswear companies. There is no obvious inference to be drawn from that experience that would substantiate the Government's contention that these Defendants therefore have an "intimate[] familiar[ity]" with the certifications submitted by basketball recruits to college compliance departments. *Id.* The Government's claim that Mr. Code must have known of the certifications because he himself was a college basketball player is equally specious. (Tr. 194:24-195:16.) To Defendants' knowledge, the Government does not have any evidence that Mr. Code ever submitted a certification similar to the Bowen Certifications when he was an athlete at Clemson or that such a certification was even required when Mr. Code played college basketball more than two decades ago.

5

Likewise, the Government's argument that because defense counsel for Mr. Dawkins "opened on the fact that his client worked with student-athletes on a variety of different issues," a jury could "readily conclude that [Mr. Dawkins] was aware of the various different types of things that student-athletes had to complete" for compliance is also unpersuasive. *Id.* Defendants submit that it would be impermissible speculation for the jury to conclude that Mr. Dawkins knew about and intended for the Bowen Certifications to be submitted to Louisville based on the fact that Mr. Dawkins "worked with student-athletes on a variety of different issues." *United States v. Litvak*, 808 F.3d 160, 172-173 (2d Cir. 2015) (where evidence was "purely theoretical," jury's conclusion was improper).

Absent a predicate factual showing demonstrating each Defendant's knowledge that certifications of NCAA compliance would be submitted to Louisville, the Bowen Certifications do "not tend to prove a material fact"—*i.e.*, a fact that would affect the outcome of this case under the Indictment's allegations—and thus, are "irrelevant" and inadmissible. *See Arlio*, 474 F.3d at 52; *Beth Israel Med. Ctr. V. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 579 (2d Cir. 2006).

Respectfully submitted,

/Michael Schachter/c.s.m.
Michael S. Schachter

On Behalf Of:
Mark C. Moore
Merl F. Code
(*Counsel for Defendant Merl Code*)

Steven A. Haney
(*Counsel for Defendant Christian Dawkins*)

cc (by email):
Edward Diskant

6

Noah Solowiejczyk
Mark Eli
Aline Flodr
U.S. Department of Justice