UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                           :

UNITED STATES OF AMERICA,           :

     v.                                  :

                                        :   Case No. S2 17-cr-00686 (LAK)

JAMES GATTO,                   :
a/k/a "Jim,"                     :
MERL CODE, and                 :
CHRISTIAN DAWKINS,        :
                                         :

           Defendants.         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANTS' MEMORANDUM OF LAW IN
OPPOSITION TO NON-PARTY MUNISH SOOD'S MOTION
TO QUASH DEFENDANT GATTO'S RULE 17 SUBPOENA**

**NEXSEN PRUET LLC**
Mark C. Moore
Andrew A. Mathias
55 E. Camperdown Way, Suite 400
Greenville, South Carolina 29601
(864) 370-2211

**OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.**
Merl F. Code
300 North Main Street
Greenville, South Carolina, 29601
(864) 271-1300

*Attorneys for Defendant Merl Code*

**WILLKIE FARR & GALLAGHER LLP**
Michael S. Schachter
Casey E. Donnelly
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

*Attorneys for Defendant James Gatto*

**HANEY LAW GROUP PLLC**
Steven A. Haney
3000 Town Center Drive, Suite 2570
Southfield, Michigan 48075
(248) 414-1470

*Attorneys for Defendant Christian Dawkins*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .............................................................................1

FACTUAL BACKGROUND..............................................................................1

      A.    Mr. Sood Is A Key Cooperating Witness. ....................................1

      B.    Defendant Gatto's Rule 17 Subpoena To Sood. ..........................2

LEGAL STANDARD.........................................................................................2

ARGUMENT ......................................................................................................7

  I.    THE SUBPOENA SATISFIES THE STANDARDS OF RULE 17. .....................7

      A.    The Requested Documents Are Relevant, Material, And Admissible.........7

      B.    The Requested Documents Are Specifically Defined. .............................10

      C.    Mr. Sood's Objections Do Not Obviate His Disclosure Obligations. .......11

CONCLUSION..................................................................................................12

## TABLE OF AUTHORITIES

**Cases**                                                                       Page(s)

*In re Irving*,
    600 F.2d 1027 (2d Cir. 1979)..............................................................................3

*United States v. Beckford*,
    964 F. Supp. 1010 (E.D. Va. 1997) ...............................................................5, 6

*United States v. Bergenstein*,
    16-cr-746 (PKC), 2017 WL 6887596 (S.D.N.Y. Dec. 28, 2017) .......................5

*United States v. Carollo*,
    No. 10 CR 654(HB), 2012 WL 1195194 (S.D.N.Y. Apr. 9, 2012) ....................3

*United States v. El-Hanafi*,
    No. S5 10 CR 162 (KMW), 2012 WL 603649 (S.D.N.Y. Feb. 4, 2012) ......................8, 9

*United States v. Gigante*,
    166 F.3d 75 (2d Cir. 1999)..............................................................................9

*United States v. Giampa*,
    No. S 92 CR. 437 (PKL), 1992 WL 296440 (S.D.N.Y. Oct. 7, 1992) ...............6

*United States v. Kaufman*,
    No. 13 CR 411-02 JMF, 2014 WL 2048198 (S.D.N.Y. May 19, 2014)............................10

*United States v. King*,
    194 F.R.D. 569 (E.D. Va. 2000) ......................................................................4

*United States v. Nachamie*,
    91 F. Supp. 2d 552 (S.D.N.Y. 2000)................................................................4

*United States v. Nixon*,
    418 U.S. 683, 94 S. Ct. 3090 (1974)................................................................3

*United States v. Rajaratnam*,
    753 F. Supp. 2d 317 (S.D.N.Y. 2011)..............................................................5

*United States v. Rivera*,
    No. 13–CR–149(KAM), 2015 WL 1540517 (E.D.N.Y. Apr. 7, 2015) ..............3

*United States v. Salameh*,
    152 F.3d 88 (2d Cir. 1998)...............................................................................9

*United States v. Soliman*,
    No. 06CR236A, 2009 WL 1531569 (W.D.N.Y. May 29, 2009).........................5

*United States v. Southland Corp.,*
    760 F.2d 1366 (2d Cir. 1985)................................................................9, 10

*United States v. Stein,*
    488 F. Supp. 2d 350 (S.D.N.Y. 2007)...............................................4, 7, 9, 11

*United States v. Stevens,*
    985 F.2d 1175 (2d Cir. 1993)..........................................................................7

*United States v. Tucker,*
    249 F.R.D. 58 (S.D.N.Y. 2008) ......................................................................5


**Statutes, Rules and Regulations**

Fed. R. Crim. P. 17(c)(1) ......................................................................................2

Fed. R. Crim. P. 17(c)(2) ......................................................................................3

Fed. R. Evid. 401 ..................................................................................................7

Fed. R. Evid. 801(c) ..............................................................................................9

Fed. R. Evid. 803(3)..............................................................................................9

Defendants James Gatto, Christian Dawkins, and Merl Code respectfully submit this memorandum of law in opposition to non-party Munish Sood's motion to quash Defendant Gatto's Rule 17 subpoena.

## PRELIMINARY STATEMENT

The Rule 17 subpoena that Defendants issued upon cooperating witness Munish Sood (the "Sood Subpoena," attached as Exhibit A) seeks certain material documents (the "Requested Documents" or "Requests"). Because the Sood Subpoena was made returnable during trial, and not before, the *Nixon* standard governing the issuance of Rule 17(c) subpoenas seeking pretrial production does not apply. But, even assuming it did, the Sood Subpoena meets each of the requirements of the *Nixon* standard because the Requested Documents are (1) relevant, (2) admissible, and (3) specifically defined. Mr. Sood's statements to the Government demonstrate that Mr. Sood regularly used a number of financial entities with which he was associated to funnel payments to college athletes—including athletes not named in the Indictment. The Government alleges that such actions are a crime, and the Sood Subpoena seeks documents that would permit Defendants to cross examine Mr. Sood with this prior criminal activity. In addition, the Sood Subpoena seeks documents that Defendants may otherwise use to impeach Mr. Sood because they shed light on his credibility as a witness, and also seeks documents which reflect Mr. Sood's then-existing state of mind.

## FACTUAL BACKGROUND

### A.     Mr. Sood Is A Key Cooperating Witness.

On August 24, 2018, the Government confirmed to Defendants that it intends to call Munish Sood, referred to as "CC-1" in the Indictment, as a witness at trial. (*See* Ind. ¶ 14). Three days later, on August 27, 2018, Munish Sood pled guilty to a three-count Information which charged him with, among other things, conspiracy to commit wire fraud and alleged that

- 1 -

he had participated in a conspiracy to defraud certain Universities by means of false statements that were intended to conceal from the Universities the fact that certain prospective college basketball players were not "eligible" to play in basketball games sponsored by the National Collegiate Athletic Association ("NCAA") because their families had accepted financial assistance in violation of NCAA rules.

**B.      Defendant Gatto's Rule 17 Subpoena To Sood.**

On September 24, 2018, Defendant Gatto served upon Mr. Sood's counsel the Sood Subpoena.  Instruction No. 2 of the subpoena makes clear that, to the extent Mr. Sood had previously produced responsive documents to the Government, those documents need not be produced to Defendants.  (*See* Ex. A Instruction No. 2).

By email dated September 26, 2018, counsel for Mr. Sood responded, stating that Mr. Sood had produced to the Government "all relevant materials" for the majority of the Requests.  (Ex. B at 2 (Email With Sood's Counsel)).  Counsel for Mr. Gatto sought clarity as to what Mr. Sood's counsel meant by this, and explained that producing "relevant" materials does not satisfy Mr. Sood's obligations to produce all *responsive* documents in Mr. Sood's possession, custody, or control.  (*Id.* at 1).  In response, Mr. Sood's counsel stated, again, that Mr. Sood had produced "all relevant materials" in his possession, cutody, or control to the Government with respect to Request Nos. 1-3 and 5-11.  (*Id.*)  With respect to Request No. 4, Mr. Sood's counsel stated that he had produced to the Government "all the materials that are relevant to this case." (*Id.*).

## LEGAL STANDARD

Pursuant to Rule 17 of the Federal Rules of Criminal Procedure, the parties in a criminal case may issue a subpoena that "order[s] the witness to produce any books, papers, documents, data, or other objects the subpoena designates." Fed. R. Crim. P. 17(c)(1).  A court

may quash or modify a subpoena only "if compliance would be unreasonable or oppressive."
Fed. R. Crim. P. 17(c)(2).

Because Rule 17(c)(1) provides that a court "may direct the witness to produce
the designated items in court before trial," the Supreme Court has developed a standard for
ensuring that Rule 17(c) subpoenas seeking pretrial production of documents do not become
tools of broader discovery.  In *United States v. Nixon*¸ the Supreme Court held that when the
Government wishes to issue a Rule 17(c) subpoena for pre-trial production, the Government
must show:

> (1) that the documents are evidentiary and relevant; (2) that they
> are not otherwise procurable reasonably in advance of trial by
> exercise of due diligence; (3) that the party cannot properly prepare
> for trial without such production and inspection in advance of trial
> and that the failure to obtain such inspection may tend
> unreasonably to delay the trial; and (4) that the application is made
> in good faith and is not intended as a general "fishing expedition."

418 U.S. 683, 699-700, 94 S. Ct. 3090, 3103 (1974) (citing *United States v. Iozia*, 13 F.R.D. 335,
338 (S.D.N.Y. 1952)).

In short, in order to meet this burden, the Government must "clear three hurdles:
(1) relevancy; (2) admissibility; (3) specificity."  *Id.*  Courts have routinely held that
impeachment materials are relevant and admissible within the meaning of *Nixon. See In re
Irving*, 600 F.2d 1027, 1034 (2d Cir. 1979) (trial court may issue a Rule 17(c) subpoena where
the documents sought could be used to impeach a witness's credibility); *United States v. Carollo*,
No. 10 CR 654(HB), 2012 WL 1195194, at *2-3 (S.D.N.Y. Apr. 9, 2012) (upholding defendant's
request for a Rule 17(c) subpoena seeking impeachment materials concerning the prospective
testimony of an unindicted co-conspirator where "[t]he Government will rely heavily on the
testimony and credibility of its cooperating witnesses[.]"); *United States v. Rivera*, No. 13–CR–
149(KAM), 2015 WL 1540517, at *4 (E.D.N.Y. Apr. 7, 2015) ("specific evidence that may be

used to impeach the cooperating witnesses and that may have bearing on the judge's assessment of the witnesses' credibility may be relevant and admissible[.]"); *see also United States v. King*, 194 F.R.D. 569, 574 (E.D. Va. 2000) (where it is known with certainty before trial that the witness will be called to testify, the admissibility determination, within the meaning of *Nixon*, can be made before trial, and the impeachment materials properly may be considered evidentiary).

Moreover, district courts in the Second Circuit have questioned whether the *Nixon* standard should even apply when the *defense*, not the prosecution, seeks a Rule 17(c) subpoena. Indeed, Your Honor has cautioned against blind adherence to the *Nixon* standard in contexts to which it was never intended to apply.  *See United States v. Stein*, 488 F. Supp. 2d 350, 365 (S.D.N.Y. 2007) ("[t]here is no question that courts confronted with subpoenas in criminal cases, at least subpoenas seeking pretrial production, have applied *Nixon* almost without exception . . . . But it is vitally important never to let the frequent repetition of a familiar principle obscure its origins and thus lead to mindless application in circumstances to which the principle never was intended to apply.").  In *United States v. Nachamie*, Judge Scheindlin explained that, because the prosecution can use the grand jury to investigate and has broad authority to issue grand jury subpoenas without any judicial oversight, a more lenient standard than *Nixon* is warranted when considering defense applications for a Rule 17(c) subpoena since defendants, unlike the Government, have no other means by which to issue pre-trial subpoenas.  91 F. Supp. 2d 552, 562-63 (S.D.N.Y. 2000).

Subsequently, in *United States v. Tucker*, Judge Scheindlin held that the *Nixon* standard "is inappropriate where production is requested by (A) a criminal defendant; (B) on the eve of trial; (C) from a non-party; (D) where the defendant has an articulable suspicion that the

documents may be material to his defense.  A defendant in such a situation need only show that the request is (1) reasonable, construed as 'material to the defense,' and (2) not unduly oppressive for the producing party to respond."  249 F.R.D. 58, 66 (S.D.N.Y. 2008); *see also United States v. Soliman*, No. 06CR236A, 2009 WL 1531569, at *4 (W.D.N.Y. May 29, 2009) (applying the *Tucker* standard and granting defendant's motion for the issuance of a Rule 17(c) subpoena); *United States v. Rajaratnam*, 753 F. Supp. 2d 317, 321 n.1 (S.D.N.Y. 2011) (Judge Holwell: "it remains ironic that a defendant in a breach of contract case can call on the power of the courts to compel third-parties to produce any documents 'reasonably calculated to lead to the discovery of admissible evidence,' . . . while a defendant on trial for his life or liberty does not even have the right to obtain documents 'material to his defense' from those same third-parties. Applying a materiality standard to subpoenas *duces tecum* issued to third parties under Federal Rule of Criminal Procedure 17(c) would resolve that puzzle at great benefit to the rights of defendants to compulsory process and at little cost to the enforcement of the criminal law, since Rule 17(c) permits the government to issue subpoenas as well."); *cf United States v. Bergenstein*, 16-cr-746 (PKC), 2017 WL 6887596 at *4 (S.D.N.Y. Dec. 28, 2017) ("'[T]he overwhelming majority of district courts in the Second Circuit have [instead] applied the *Nixon* analysis to [defense Rule 17(c) subpoena] requests' because the relaxed *Tucker* standard is not prevailing law of the Circuit.") (quoting *United States v. Pena*, No. 15-cr-551 (AJN), 2016 WL 8735699, at *1 (S.D.N.Y. Feb. 12, 2016)).

In any event, the Proposed Subpoena here does not seek pretrial production of documents, and thus the *Nixon* standard does not govern.[1]  *United States v. Beckford*, 964 F.

---

[1] The Sood Subpoena seeks documents returnable on October 1, 2018, the first day of trial.  Mr. Sood is expected to testify as early as October 2.  *See* Tr. 220:25-221:2 (Mr. Diskant explaining that Mr. Sood is the Government's second witness, and that he could testify on "tomorrow," i.e.,

Supp. 1010, 1017-18, 1022 (E.D. Va. 1997) (defendant may issue a subpoena *duces tecum* returnable at trial pursuant to Rule 17(a), but a subpoena sought to be returnable before trial should satisfy the *Nixon* standard to limit "pretrial production of evidence"). Indeed, Your Honor recently upheld a similar Rule 17 subpoena issued by the Government during trial upon an unindicted co-conspirator which sought documents for impeachment purposes. In *United States v. Blaszczak*, Case No. 17-cr-357-LAK, the Government issued a subpoena to defense witness James Flynn, which requested eleven categories of documents including, among other things, "all documents, recordings, and objects" spanning eleven years from 2007 through April 18, 2018, relating to: (1) "[t]he charges in the Indictment;" (2) his sources of income; (3) "[c]ommunications with, or pertaining to, any of the individuals for whom the Government has produced material pursuant to 18 U.S.C. § 3500[;]" and (4) "[c]ommunications between you and any other individual . . . relating to your testimony in this case[.]" (Ex. C (Flynn Subpoena)). The Government stated clearly that it was requesting these materials "for impeachment." (Ex. D at 2939:18 (Excerpt of *Blaszczak* Subpoena Hearing Tr.)). Mr. Flynn objected, but Your Honor upheld the subpoena, after slightly modifying certain of the requests. (*see generally id.*; *see also* Ex. E (redline reflecting the Government's subpoena as issued compared to the subpoena as modified by Your Honor)).

---

October 2). The Sood Subpoena therefore, functionally seeks production of documents concurrent with Mr. Sood's testimony. *See United States v. Giampa*, No. S 92 CR. 437 (PKL), 1992 WL 296440, at *4 (S.D.N.Y. Oct. 7, 1992) (modifying subpoenas for impeachment material returnable on the first day of trial by making them returnable when the witness testifies).

## ARGUMENT

I. **THE SUBPOENA SATISFIES THE STANDARDS OF RULE 17.**

   A. **The Requested Documents Are Relevant, Material, And Admissible.**

Even assuming that the *Nixon* standard applies to subpoenas made returnable during trial, the Requested Documents are relevant and material to the defense. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. A document is "material to the defense" if "there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *Stein*, 488 F. Supp. 2d at 356–57 (*quoting United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (internal quotation marks omitted)); *see also United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993) (evidence is material "if it could be used to counter the government's case or to bolster a defense.").

The Sood Subpoena seeks documents relevant to showing that Mr. Sood had engaged in fraudulent activity by funneling money to college athletes through several of the financial entities he owns or is otherwise associated with. ███████████████████ ███████████████████████████████████████████ ██████████████████████████████. Because the Government alleges that such activity is fraudulent, Defendants are entitled to impeach Mr. Sood with such evidence of this prior criminal activity. For this reason, the Sood Subpoena seeks documents concerning Mr. Sood's income and financial records, including those of financial entities with which he is associated. (Ex. A at Request Nos. 3-4).

Additional Requests seek documents reflecting contemporaneous communications between Mr. Sood and others regarding matters directly relevant to the allegations in the Indictment, including: (1) documents and communications concerning payments to college athletes and/or their family members or guardians, and/or payments to any current or former college coach, *see* Ex. A at Request Nos. 1 and 2; (2) communications between Mr. Sood and Defendants and/or other alleged co-conspirators, *see* Ex. A at Request No. 5; and (3) communications relating to Mr. Sood's testimony in this case, *see id.* at Request No. 8.  To the extent that these communications reflect statements by Mr. Sood that contradict the allegations in the Indictment or his anticipated trial testimony, they are highly material to the defense, and can be used to impeach Mr. Sood's credibility.  *See, e.g., United States v. El-Hanafi*, No. S5 10 CR 162 (KMW), 2012 WL 603649, at *4 (S.D.N.Y. Feb. 24, 2012) (information is material if it could "serve either to counter the government's case, for example by discrediting a prosecution witness, or to bolster a defendant's arguments, for example by serving as a prior consistent statement corroborating a defense the accused may raise.").

Similarly, Defendants seek documents reflecting communications between Mr. Sood and others in which Mr. Sood expresses a belief regarding the NCAA rules, and the practice of making payments to college athletes and/or their families.  (Ex. A at Request Nos. 6 and 7).  This evidence would help demonstrate that, contrary to his expected testimony, Mr. Sood did not have the requisite intent to defraud when he purportedly agreed to provide financial help to the families referenced in the Indictment.

Finally, other Requests—identical to those the Government made of Mr. Flynn in *United States v. Blaszczak*—seek documents or communications that are relevant because they bear upon Mr. Sood's credibility as a witness, including: (1) communications between Mr. Sood

and any individual concerning whether such individual should or should not communicate with the Government, or testify before a Grand Jury or at trial, *see* Ex. A at Request No. 9; (2) transcripts of previous testimony by Mr. Sood given under oath, *see id.* at Request No. 15; and (3) documents concerning lawsuits or actions brought against Mr. Sood, or that he was a party to. *See id.* at Request No. 11; *see El-Hanafi*, 2012 WL 603649, at \*4; *Stein*, 488 F. Supp. 2d at 356–57.

   In addition to being admissible as impeachment material, many of the documents requested in the Sood Subpoena are admissible pursuant to Federal Rule of Evidence 803(3) to show Mr. Sood's then-existing state of mind, which is at issue because he is an alleged co-conspirator of Defendants.  *See* Fed. R. Evid. 803(3); *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999) ("idle chatter among [co]conspirators" is often admissible under the state of mind hearsay exception).  As explained above, contemporaneous communications between Mr. Sood and others may show that, at the time Mr. Sood undertook the actions alleged in the Indictment, he did not believe that his conduct constituted an NCAA rule violation, nor that he was engaged in a fraudulent scheme.  (*See* Ex. A at Request Nos. 2, 5-8).  Such communications would bear directly upon whether there even was a conspiracy among Mr. Sood and Defendants to commit a crime.  *See, e.g.*, *United States v. Salameh*, 152 F.3d 88, 151 (2d Cir. 1998) (to convict a defendant as a member of a conspiracy, "[t]he government must prove that the defendant 'agreed to commit a *particular offense* and not merely a vague agreement to do something wrong.'") (*quoting United States v. Provenzano*, 615 F.2d 37, 44 (2d Cir. 1980) (citation and internal quotation marks omitted)).  And, even if such communications were not admissible for their truth under Rule 803(3), they would be admissible under Rule 801(c) for the non-hearsay purpose of demonstrating Mr. Sood's state of mind.  *See* Fed. R. Evid. 801(c); *United States v. Southland*

- 9 -

*Corp.*, 760 F.2d 1366, 1376 (2d Cir. 1985) ("When a declaration is admitted only to prove a relevant state of mind, it does not appear to matter . . . whether admissibility is predicated on the declaration not being hearsay because it was not offered to prove the truth of the matter asserted, FRE 801(c), or under the hearsay exception for declaration of states of mind, FRE 803(3)."); *United States v. Kaufman*, No. 13 CR 411-02 JMF, 2014 WL 2048198, at *10 (S.D.N.Y. May 19, 2014) (recorded conversations between the defendant's co-conspirator and others were properly admitted because "[t]he recordings were plainly relevant to [the co-conspirator's] state of mind, which, in turn, was plainly relevant to [the defendant's] guilt.").

**B.    The Requested Documents Are Specifically Defined.**

      In addition to being relevant and admissible, the documents sought by the Sood Subpoena are specifically defined, as the Requests seek material documents from the narrow time period of January 1, 2013 through the present (less than six years).

      As mentioned above, in *United States v. Blaszczak*, Your Honor compelled the production of documents in response to a subpoena which was substantially similar to the Sood Subpoena.  There, the subpoena to defense witness James Flynn requested eleven categories of documents including, among other things, "all documents, recordings, and objects" spanning eleven years from 2007 through April 18, 2018, relating to: (1) "[t]he charges in the Indictment relating to Deerfield obtaining material, non-public information from David Blaszczak;" (2) "[c]ommunications with [Centers for Medicare and Medicaid Services;]" (3) "[c]ommunications with, or pertaining to, any of the individuals for whom the Government has produced material pursuant to 18 U.S.C. § 3500[;]" and (4) "[c]ommunications between you and any other individual . . . relating to your testimony in this case[.]"  (Ex. C).  Your Honor upheld the subpoena after slightly modifying certain of the requests.  (Ex. D at 2939:18; *see also* Ex. E). The Sood Subpoena, by contrast, is even less burdensome and more specific than the one Your

- 10 -

Honor upheld in *Blaszczak*, as it seeks relevant and material documents from a more limited time frame of less than six years.

### C.    Mr. Sood's Objections Do Not Obviate His Disclosure Obligations.

Mr. Sood objects to the vast majority of the Requests by explaining that he has produced "documents and communications relating to the allegations in this matter and a separate matter involving alleged payments to NCAA basketball coaches," or that he has otherwise produced documents "that relate to the fraud and bribery allegations charged in the *Gatto* and *Evans* cases," and thus he is excused from his obligations to produce documents responsive to the subpoena.[2]  (Sood Motion at 3-4).  Putting aside the fact the Sood Subpoena by its terms does not limit its scope to documents that Mr. Sood deems relevant to the instant matter, there is nothing in the language of Rule 17, nor the body of case law interpreting it, that stands for the proposition that a party's obligation to produce all responsive documents in response to a subpoena is obviated by the production of certain documents that the party claims are relevant.  *See Stein*, 488 F. Supp. 2d at 368 (S.D.N.Y. 2007) (a subpoenaed party "'cannot evade its discovery responsibilities by simply intoning this familiar litany that the [disclosure sought would be] burdensome, oppressive or overly broad, '" but rather "must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.'") (*quoting Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105

---

[2] Mr. Sood appears to contest the propriety of only one category of the Requested Documents— Request No. 4, which seeks financial records of entities with which Mr. Sood is associated.  Mr. Sood argues that this request is "unreasonable and oppressive" and constitutes a fishing expedition.  (*See* Motion to Quash (the "Sood Motion") at 3-4).  For the reasons discussed herein, the documents sought in Request No. 4 are relevant, admissible, and specifically defined such that they do not pose an unreasonable burden on Mr. Sood.

- 11 -

F.R.D. 16, 42 (S.D.N.Y.1984) and *Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296-97 (E.D.Pa. 1980)).

       Because Mr. Sood has failed to "show specifically how each [request] is not relevant or how each request is overly broad," but has instead "inton[ed] the familiar litany" that disclosure would be burdensome or that he otherwise has already produced to the Government documents he deemed "relevant," his motion to quash the subpoena should be denied.

## CONCLUSION

       For the foregoing reasons, Defendants respectfully submit that the Court should deny Mr. Sood's motion to quash Defendant Gatto's Rule 17 subpoena.

Dated: New York, New York
     October 2, 2018

**NEXSEN PRUET LLC**

By: _____
William W. Wilkins
Mark C. Moore
Andrew A. Mathias
55 E. Camperdown Way, Suite 400
Greenville, South Carolina 29601
(864) 370-2211

**OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.**
Merl F. Code
300 North Main Street
Greenville, South Carolina, 29601
(864) 271-1300

*Attorneys for Defendant Merl Code*

**WILLKIE FARR & GALLAGHER LLP**

By: *Michael Schacter*
Michael S. Schachter
Casey E. Donnelly
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

*Attorneys for Defendant James Gatto*

**HANEY LAW GROUP PLLC**

By: _____
Steven A. Haney
3000 Town Center Drive, Suite 2570
Southfield, Michigan 48075
(248) 414-1470

*Attorneys for Defendant Christian Dawkins*

- 13 -

Dated: New York, New York
      October 2, 2018

**NEXSEN PRUET LLC**

By: *Mark Moore*

William W. Wilkins
Mark C. Moore
Andrew A. Mathias
55 E. Camperdown Way, Suite 400
Greenville, South Carolina 29601
(864) 370-2211

**OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.**

Merl F. Code
300 North Main Street
Greenville, South Carolina, 29601
(864) 271-1300

*Attorneys for Defendant Merl Code*

**WILLKIE FARR & GALLAGHER LLP**

By: _____

Michael S. Schachter
Casey E. Donnelly
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

*Attorneys for Defendant James Gatto*

**HANEY LAW GROUP PLLC**

By: _____

Steven A. Haney
3000 Town Center Drive, Suite 2570
Southfield, Michigan 48075
(248) 414-1470

*Attorneys for Defendant Christian Dawkins*

Dated: New York, New York
       October 2, 2018

**NEXSEN PRUET LLC**

By: _____
William W. Wilkins
Mark C. Moore
Andrew A. Mathias
55 E. Camperdown Way, Suite 400
Greenville, South Carolina 29601
(864) 370-2211

**OGLETREE, DEAKINS, NASH, SMOAK**
**& STEWART, P.C.**
Merl F. Code
300 North Main Street
Greenville, South Carolina, 29601
(864) 271-1300

*Attorneys for Defendant Merl Code*

**WILLKIE FARR & GALLAGHER LLP**

By: _____
Michael S. Schachter
Casey E. Donnelly
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

*Attorneys for Defendant James Gatto*

**HANEY LAW GROUP PLLC**

By: *Steve Haney*
Steven A. Haney
3000 Town Center Drive, Suite 2570
Southfield, Michigan 48075
(248) 414-1470

*Attorneys for Defendant Christian Dawkins*

- 13 -